[Civ. No. 3566.   Fourth Dist.   May 12, 1947.]

EFFIE W. McNEW, Appellant, v. SHIRLEY M. RENCH, Respondent.

Siemon, Maas & Siemon, Alfred Siemon, Walter L. Maas, Jr., and Bennett Siemon for Appellant.

T. R. Claflin for Respondent.

BARNARD, P. J.—This is an action for reformation of the description in a contract, and for specific performance.

On February 15, 1941, the defendant and her husband contracted to sell about 40 acres of land to the plaintiff. All business in connection with this transaction, both before and after the signing of the contract, was handled for the plaintiff by her husband, H. L. McNew. The defendant's husband

subsequently died and she has succeeded to all of his interest in the property. Among other things, the contract provided that the plaintiff should subdivide the property, and that upon the payment. of $400, to be applied upon the purchase price, the defendant would convey any lot to the plaintiff or to any person designated by her. It was then provided that when the purchase price was fully paid, the defendant would "convey all of said real property not previously conveyed" to the plaintiff or to any one named by her. Nothing was said in this contract about any reservation of oil or mineral rights in the defendant or her husband.

In September, 1941, at the request of the plaintiff, the defendant and her husband executed two deeds conveying portions of the property to third parties. By each of these deeds an undivided one-half interest in all minerals in and under the land was reserved to the grantors. In December, 1943, the defendant conveyed the remainder of the property to H. L. McNew, the husband of the plaintiff. This deed contained a clause excepting therefrom an undivided 3 per cent interest in all oil, gas and kindred substances which had theretofore been granted to other parties, and also one reserving to the grantor an undivided 47 per cent interest in and to all oil, gas and similar substances. At the same time, and as part of the same transaction, H. L. McNew gave back a trust deed in favor of the defendant securing the balance of the original contract price of the property. This trust deed, in connection with the description of the property, contained the following: "Except therefrom 50% of all oil, gas and other minerals in and under said land, as reserved and excepted in the deed from Shirley M. Rench dated December 6, 1943 and filed for record concurrently herewith." At the same time the plaintiff gave to her husband H. L. McNew a quitclaim deed covering the property described in the trust deed and containing the same exception as above quoted. Under date of November 30, 1944, a community oil lease was executed leasing to the Richfield Oil Corporation the property here involved and a number of other properties owned by other parties. The defendant signed this lease, leasing the 50 per cent oil interest here involved, and the plaintiff's husband, H. L. McNew, also signed it, leasing other property owned by him.

This action was filed on February 15, 1945. The complaint alleged a mutual mistake in the description of the property and asked that the contract be reformed by correcting that

description. It was then alleged that on December 28, 1942, the defendant, at the request of the plaintiff, conveyed certain described property to H. L. McNew, the deed containing no reservation whatever; that at sundry times the defendant and/or her husband had made conveyances to the plaintiff or to persons purchasing said lands from her, which included all of the lands covered by the contract in question; that each and all of said conveyances, other than the one of December 28, 1942, specifically reserved in the grantors 50 per cent of all oil, gas and mineral rights; that all of such reservations were made at the direction and for the use and benefit of plaintiff or were made by the defendant for the use and benefit of the plaintiff; that, with the exception of the property covered in the deed of December 28, 1942, neither the defendant nor her deceased husband has ever conveyed to the plaintiff the 50 per cent of the oil rights; that on or about January 5, 1944, the plaintiff paid the entire balance of the purchase price to the defendant; that on or about December 1, 1944, the plaintiff demanded from the defendant a conveyance of the 50 per cent of the oil rights which had been thus reserved; that the defendant refused this demand; that the plaintiff is the owner and entitled to a conveyance of such 50 per cent interest; that before the contract between these parties was executed the defendant and her husband had conveyed to persons not parties to the action 3 per cent of the oil rights in and under these lands; that the reasonable value of the 3 per cent thus conveyed is $1,500; and that the Richfield Oil Company accepted a lease from the defendant with full knowledge of the rights of the plaintiff. The prayer was that the contract be reformed by correcting the mistake in the description of the property; that the defendant be required to convey to the plaintiff 47 per cent of oil and gas substances which had been reserved in the previous conveyances; and that the plaintiff have judgment for $1,500 as the value of the 3 per cent interest in the oil rights which had previously been conveyed to others.

The Richfield Oil Corporation filed an answer denying that it had taken its lease with knowledge of the plaintiff's rights, and alleging that when the lease was executed it had been informed by the plaintiff that the defendant owned 50 per cent of the mineral interest in question and was entitled to lease the same. Later on, the Richfield Oil Corporation filed an amended answer disclaiming all interest in the property.

The defendant filed an answer and cross-complaint. The answer denied the allegations of the complaint which are material here, and alleged that no conveyance had been made pursuant to the contract without a reservation of the oil rights, with the exception ''that an exchange of parcels of land was made for the purpose of enabling H. L. McNew to construct a road.'' The cross-complaint alleged, among other things, that it was the purpose and intention of the parties to the contract to include therein a clause reserving to the vendors 50 per cent of all oil rights in the land; that by mutual mistake the scrivener inadvertently omitted such a reservation therefrom; and that all parties to the agreement in all of their subsequent dealings with each other have acted as though said reservation was contained in the contract. The prayer was that the plaintiff take nothing, and that the contract be so reformed as to provide therein for such a reservation.

The court found that a mistake had been made in the description of the property; that it was the purpose and intention of the parties to reserve to the defendant and her husband 50 per cent of the oil rights; that in reducing the agreement to writing the scrivener had inadvertently omitted such a reservation; that the mistake was mutual; and that both parties had acted throughout their subsequent dealings with each other as though the omitted clause had been included in the contract. Judgment was entered accordingly, reforming the contract with respect to the mistake in the description, and restraining and enjoining the plaintiff from asserting any right or claim in or to the 50 per cent of the oil rights which had been reserved in the various conveyances. From this judgment the plaintiff has appealed.

Both parties agree with that portion of the judgment which corrects the mistake in the description of the property, and the only controversy here relates to the reservation of oil rights as contained in the several conveyances made. The appellant claims that these were made for her benefit and not for that of the defendant. She first contends that she is entitled to a full conveyance of both the land and the oil rights, in accordance with the contract; that since there is no ambiguity the intention of the parties must be found in the terms of the contract itself; that all preliminary negotiations were merged in and superseded by the written contract; and that parol evidence was not admissible to show an intention contrary to that appearing in the contract. These conten-

tions are sufficiently answered by the provisions of section 1856 of the Code of Civil Procedure, which expressly authorizes evidence outside of the terms of the agreement in cases where a mistake or imperfection of the writing is put in issue by the pleadings.

It is next contended that the evidence is not sufficient to support the finding that a reservation of 50 per cent of the oil rights was omitted from the contract by mistake. The respondent testified that Mr. McNew came to their home to negotiate for the purchase of the property; that she and her husband talked the matter over with him; that they talked over the matter of a reservation by the Renches of 50 per cent of the oil and gas rights; that it was stated that "We were to retain fifty per cent, that is forty-seven per cent, because Art already sold three per cent"; that it was agreed between them that a written contract should be prepared which should contain a reservation of 50 per cent of the oil and gas rights; that the contract was not finished by the attorney until some two weeks later; that several changes were made in drafts of the contract but no change had anything to do with any such reservation; that when the contract was completed she signed it but did not read it; that she left the matter largely to her husband; that before the contract was ever written she heard her husband tell the attorney about this reservation; that after the contract was executed she had several conversations with Mr. McNew in which he made no claim to 50 per cent of the oil rights but "he always spoke of it as being mine"; that neither Mr. or Mrs. McNew ever said anything to her about claiming to own this 50 per cent of the oil rights; that shortly before the Richfield lease was executed Mr. McNew called her on the phone and told her that the Richfield men wanted a lease out there; that she asked McNew what he was going to do; that he replied he was going to cooperate all he could but said: "I don't know, I haven't got too much over there"; that he said nothing about either him or his wife claiming the 50 per cent oil interest; that she later signed the Richfield lease and received a bonus of $470.85 for her 47 per cent; and that until this suit was filed she did not know that the contract did not contain a reservation of this 50 per cent interest in the oil.

The appellant testified that he had been engaged in the real estate business in that community for 40 years; that during the last 10 years he had been engaged in subdivisions and buying and selling properties with oil rights; and that

in talking with the Renches nothing had been said about any reservation of the oil rights. He admitted calling the respondent about the Richfield lease, and that he asked her if she was willing to lease any interest she had, to which she agreed. He then stated that immediately after that he began to search through his files to find out what his papers showed; that he failed to find anything but later happened to find his contract; and that this was the first time he had read it since it was signed. This testimony is somewhat inconsistent with his explanation as to why he had accepted conveyances of all, or practically all, of the property with deeds reserving 50 per cent of the oil rights to the respondent. He said he did this because he wanted to reserve 50 per cent of the mineral rights in himself "with a view if it become necessary to sell some people at some subsequent sales of subdivisions to use some of the mineral rights perhaps as a bonus to cash their paper." The natural inference from his entire testimony is that he changed his mind when he found and reread his contract, long after all of the property had been conveyed.

There are other circumstances which could and should be considered in this connection. It would appear from the record that the Renches originally owned only 50 per cent of the oil rights in connection with this land. They had previously sold 3 per cent to other parties and it is hardly to be assumed that they would agree to again sell that portion. This tends to confirm respondent's testimony that she and her husband intended to reserve the oil rights. There is other evidence indicating that the appellant had the same intention. The contract itself called for the making of partial conveyances from time to time. This would call for deeds for particular parts of the property, but such deeds would naturally be expected to cover all that was to be conveyed in that portion of the land, in the absence of special arrangements to the contrary. The contract further provided for a final deed conveying "all of said real property not previously conveyed." It was stipulated that the appellant prepared all of the deeds which were given, and submitted them to the respondent and her husband for signature. All of these deeds contained clauses reserving 50 per cent of the oil rights to the respondent or to her husband, with one possible exception which will be mentioned. The appellant prepared and accepted all of these deeds, including the final deed, and no objection or claim was made that she or her husband was entitled to any further conveyance. Nearly a

year later, he signed a community lease with Richfield, with respect to other property owned by him, and encouraged the respondent to sign this lease, with respect to the 50 per cent interest in question, knowing that Richfield was paying her a bonus. Two employees of the Richfield Oil Company testified that about the middle of November, 1944, in a conversation with the appellant and her husband, Mr. McNew told them that the respondent owned this 50 per cent and had the right to lease it, and that he offered to call the respondent on the phone and tell her that a lease was desired, which he did. McNew later found his contract and told the Richfield people that he claimed this 50 per cent.

It is contended that the respondent actually recognized the appellant's right to the conveyance here demanded in that the deed of December 28, 1942, contained no reservation of oil rights in favor of the respondent. This deed covers a narrow strip some 600 feet long and a few feet wide. It is stated in the pleadings that it was a part of an exchange of deeds for the purpose of enabling Mr. McNew to put in a road. The respondent owned other property there, and we cannot tell from the record whether or not this deed included a small part of the land covered by the contract. Whether or not this is true appellant's counsel stated to the trial court "I think there is no proof any conveyance was made to the plaintiff by Mrs. Rench or her husband without reservation." The most that can be said insofar as this deed is concerned is that it added to the conflict in the evidence.

In our opinion, the evidence, including that which discloses the manner in which these parties dealt with respect to their rights under this contract, is sufficient to sustain the finding in question.

In her final brief the appellant argues, for the first time, that the court erred in admitting the testimony as to conversations between her husband and herself and agents of the Richfield Oil Company. It is argued that the only purpose of this testimony was to support the claim of mistake and that it should have been excluded under the rule that parol testimony cannot be admitted in the absence of contractual ambiguity. The evidence was admissible under the provisions of section 1856, Code of Civil Procedure, and as an act, declaration or omission against interest under section 1870, Code of Civil Procedure.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.